[No. 11656.   Department Two.   June 6, 1914.]

John Waldy, *Respondent*, v. Preston Mill Company, *Appellant*.[1]

Negligence—Fires—Liability—Failure to Secure Permit—Statutes—Application. 3 Rem. & Bal. Code, § 5277-8, providing that no one shall burn any forest material within any county in which there is a fire warden or ranger, during specified months, without first having obtained a written permission from the warden or ranger, has no application where the fire warden sent rangers to personally superintend the burning and take charge thereof; hence the setting of a fire, pursuant to the directions of rangers in charge of the burn, does not render the party liable as for a fire set without the written permit, as provided by the statute requiring permits, it not being customary to issue permits in such cases.

Negligence—Fires—Liability. Where forest rangers in charge of a burn arranged for the starting of a fire by defendant upon a given signal, and defendant mistook or misunderstood the signal and started a fire too soon, thereby destroying plaintiff's property, the defendant is not liable unless it failed to act as a reasonably prudent person would have acted in the exercise of reasonable care in starting the fire.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered June 12, 1913, upon the verdict of a jury rendered in favor of the plaintiff, in an action for damages through the destruction of property by fire. Reversed.

*Corwin S. Shank* and *Horatio C. Belt*, for appellant.

*Vanderveer & Cummings*, for respondent.

Fullerton, J.—The Preston Mill Company and the Northwest Lumber Company owned adjoining timber lands, situated in King county, which they were engaged in logging. Near their boundary line, was a tract of logged off lands, which, on account of the forest material or debris left thereon, was dangerous in the dry season to the timber lands because of the fire risk. Sometime in the spring of 1912, a

[1]Reported in 141 Pac. 192.

representative of the Northwest Lumber Company met a representative of the Preston Mill Company and suggested the burning of the logged off lands before the dry season, and finding the representative of the latter company agreeable thereto, undertook to make the necessary arrangement with the fire warden for that purpose. Later on the attention of the fire warden was called to the matter, and on June 1, 1912, he sent two rangers to the place to superintend the burning. The rangers arrived at the tract desired to be burned on the morning of the day mentioned, looked the same over, and determined upon a line of action. The respondent, John Waldy, then had a railway construction camp near the side of the tract it was desired to burn, he being then engaged in constructing a logging road for the Northwest Lumber Company. The rangers, as a preparation for the main fire, required a clearing to be made in front of Waldy's camp, and a fire break to be constructed in front of certain standing timber belonging to the Northwest Lumber Company. The rangers then went to a representative of the Northwest Lumber Company and told him of the preparations necessary to be made, and the representative at once started a crew of men at work thereat. The rangers then went to the camp of the Preston Mill Company, and meeting the foreman, consulted with him as to the preparations necessary to be made on that side of the proposed burn; telling the foreman of the preparations necessary to be made on the other and that such preparations would probably not be completed until some time in the afternoon. What further occurred at this interview is a matter of dispute in the evidence. It seems to have been understood, however, that no special preparations were necessary to be made on the Preston Mill Company's side of the burn, and that fires should be started on both sides thereof at the same time. The misunderstanding was as to the time the foreman of the Preston Mill Company should direct the fires to be started. He testified that no particular signal was agreed upon; that he understood he

was to fire when he saw the fires started on the opposite side. On the other hand, one of the rangers testified (the other had died prior to the trial) that one of them would return when the preparations on the other side were completed and notify the foreman when the proper time arrived.

The foreman of the Preston Mill Company took a crew of men from the logging works and went out to the burn shortly after the noon hour. After staying some time, he saw, as he testified, black smoke arising from fires on the opposite side, and thinking them fires started for the purpose of burning the logged off tract, started the fires on his side. The fires he saw, however, were not fires set on the tract to be burned, but fires set in the debris around Waldy's camp, in the course of preparing for the final fire. One of the rangers was on his way over to the Preston Mill Company's side of the burn at the time the fires were started on that side. On seeing the fires, he hastened back and directed the fires to be started on the Northwest Lumber Company's side, notwithstanding the incomplete preparations. These fires, however, did not gain sufficient headway to check the onrush of the fires started by the foreman. The result was that the fires got beyond control and burned the Waldy construction camp, with all of the tools, groceries and furnishings therein.

This action was begun by Waldy against both the Preston Mill Company and the Northwest Lumber Company to recover for the losses suffered by the burning of the camp. At the conclusion of his case in chief, he was nonsuited as to the Northwest Lumber Company, and that company was dismissed from the action. The case continued as to the Preston Mill Company, and resulted in a verdict and judgment against it for the sum of $500. From the judgment, the Preston Mill Company appeals.

The evidence at the trial disclosed that neither the fire warden nor the rangers had issued to the Preston Mill Company any written permit to burn the forest material on the land in question, and that the company had no such permit

from any other source.  Pertaining to this matter, the court gave the following instruction to the jury:

"I instruct you further that, under the laws of this state, no one shall burn any forest material within any county in this state in which there is a warden or ranger, during the months of June to September, inclusive, in each year, which period is hereby designated as the closed season, without first obtaining permission in writing from the forester, lor a warden, or a ranger, and afterwards complying with the terms of said permit, and that failure to comply with these regulations is negligence."

The appellant assigns error upon the giving of the foregoing instruction, contending that the rule therein announced, while perhaps applicable in certain circumstances, is not applicable to the circumstances of the particular case because the burning in this instance was under the immediate charge of rangers selected by the fire warden to take charge of the burning, and because it nowhere appeared in the evidence that the want of a written permit on the part of the Preston Mill Company was the proximate cause of the injury.  It appears to us that the objection is well taken. The statute relating to forest fires and the burning of forest material will be found in 3 Rem. & Bal. Code in §§ 5277-1 to 5277-21.  This statute does, in § 5277-8, provide that no one shall burn any forest material within any county in this state in which there is a warden or ranger during the months of June to September, inclusive, without first obtaining written permission of the fire warden or ranger, and afterwards complying with the terms of the permit; but a perusal of the remainder of the statute makes it clear that this prohibition was intended to apply to a case where a person disconnected with the forest service desired to do the burning, and has no application to a case where rangers are sent to superintend the burning and actually take personal charge thereof.  Such, moreover, is the construction put upon the act by the persons having in charge its execution.  It was testified by the fire warden himself that it had never been,

and was not then, the custom of his office to issue written permits to burn forest material where the warden goes personally, or sends rangers, to take charge of the burning. Here rangers were sent by the fire warden having jurisdiction under the forest service over this territory to take charge of the burning. They did take charge of it, and authorized the appellant through its agent to set out the fire when a signal so to do should be given by the rangers. The agent misunderstood or mistook the signal, and started the fire before the protective preparations had been completed. The fire was, nevertheless, under the charge and direction of the rangers, and the appellant's liability for any injury done thereby cannot rest on the want of a written fire permit.

The appellant is liable for the destruction of the respondent's property, if it is so liable at all, on the principle that its agent in starting the fire failed to exercise reasonable and ordinary care in so doing. If the agent acted as a reasonably prudent person would have acted under like or similar circumstances, the appellant is not liable. If he failed so to act, it is liable. This question, and this question alone, should have been submitted to the jury.

The judgment appealed from is reversed, and the cause remanded for a new trial.

CROW, C. J., MORRIS, PARKER, and MOUNT, JJ., concur.